IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| BRENDA CALLAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:16-cv-00167 |
| | ) |
| PRINCE WILLIAM COUNTY | ) |
| PUBLIC SCHOOLS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## Memorandum Opinion

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment.

In 1988, Prince William County Public Schools ("Defendant") hired Brenda Callahan ("Plaintiff") as a classroom teacher. Ten years later Defendant promoted Plaintiff to being an Assistant Principal at Occoquan Elementary School, where Plaintiff worked until 2012. Before the 2012-2013 school year, Defendant transferred Plaintiff and two other assistant principals to other schools to gain experience under different leadership. Plaintiff went to Mary Williams Elementary School ("Mary Williams"), where she was under the supervision of Principal Marlene Coleman. Marlene Coleman is African-American; Plaintiff is Caucasian.

Defendant requires assistant principals to report to work at 8:00 a.m. every morning, except Wednesdays when faculty must report to work at 7:45 a.m. for a weekly meeting. Prior to her transfer to Mary Williams, Plaintiff had a documented habit of chronic tardiness. In October 2010, Plaintiff's own Growth Plan identified tardiness as a weakness. Plaintiff's supervisor at Occoquan, Principal Sandra Carrillo, also noted that Plaintiff failed to report to work promptly. In January 2011, Carrillo gave Plaintiff a Professional Improvement Plan (PIP) reporting that from August 2010 to January 2011 Plaintiff was late on sixty-eight out of seventy-four documented arrival times. In February 2011, Carrillo wrote in her Mid-Year evaluation that Plaintiff was regularly tardy.

Plaintiff's chronic tardiness did not change when Defendant transferred her to Mary Williams. Near the start of the 2012–2013 school year, Principal Coleman spoke with Plaintiff about the need to arrive on time. A few more times throughout the start of the year, Coleman again confronted Plaintiff with her tardiness. Plaintiff does not dispute that these conversations occurred. In her Mid-Year Report in January 2013, Coleman wrote that Plaintiff failed to meet Prince William County Public School's expectations in "Safe and Effective Learning" because she did not arrive to work promptly or follow through on assignments in a timely manner.

On that same day, Coleman also gave Plaintiff a Performance Improvement Plan (PIP), which identified several deficiencies in Plaintiff's performance. The PIP indicated that Plaintiff was deficient in monitoring daily operations to ensure efficiency, maintaining focus on learning programs, facilitating weekly professional learning community meetings, and monitoring bus duty to ensure students remained safe and secure.

To help Plaintiff improve in arriving to work on time, the PIP required Plaintiff to track her arrival times using the custodian's clock. Despite tracking her times, Plaintiff only arrived on time once between January 30, 2013, and March 14, 2013. On March 14, 2013, Coleman issued Plaintiff a Letter of Reprimand. Coleman articulated to Plaintiff that her tardiness failed to meet Defendant's performance expectations, and it negatively impacted the school's operations. On one occasion, Plaintiff's tardiness delayed the school's standardized testing.

In April 2013, Coleman and Plaintiff met with Rita Goss, the Defendant's Associate Superintendent for Eastern Elementary Schools. Goss is Caucasian. In the meeting with Goss, Coleman discussed Plaintiff's performance and attendance. For the first time, Plaintiff indicated that she struggled with punctuality because of a medical condition, postherpetic neuralgia. After the meeting, Goss referred Plaintiff to Defendant's Human Resources department and asked Plaintiff to provide the school

with a letter from her doctor suggesting an accommodation for her condition. Coleman also followed up with a brochure for Plaintiff on the Defendant's Employee Assistance Program. Goss also contacted an HR director, Deborah Sparks, to speak with Plaintiff about making an accommodation for Plaintiff's medical condition.

As the school year drew to a close, Plaintiff's performance still had not improved. In May 2013, Coleman issued Plaintiff a Summative Evaluation Report, which cited Plaintiff's failure to meet Defendant's standards in two categories: "Leadership" and "Safe, Effecting Learning/Work Environment." The report stated that Plaintiff had shown improvement in punctuality but still struggled with time management and other performance issues.

Coleman also gave Plaintiff another Letter of Reprimand for arriving late to work at least twenty-four times between March 14, 2013, and May 31, 2013. Of the eighty recorded arrival times during the entire school year, Plaintiff was timely twenty-two days. Plaintiff provided many reasons for her tardiness such as being delayed by traffic, parents, students, other employees, injuries, and the location of her parking space. Despite these performance issues, Coleman recommended that Defendant renew Plaintiff's contract and keep her on as an Assistant Principal at Mary Williams for the next year.

In May 2013, Coleman and Goss met with Plaintiff. In the meeting, they discussed Plaintiff's performance deficiencies. Plaintiff explained that she did not think that she and Coleman were a good fit. Goss informed Plaintiff that the PIP prevented Plaintiff from transferring as an assistant principal to another school, which left Plaintiff with a choice between improving at Mary Williams or transferring to a classroom position at another school. Plaintiff agreed to return to the classroom.

In June 2013, without Coleman's knowledge, Goss recommended to Dr. Steven Walts, the Superintendent of Prince William County Public Schools, that Plaintiff be transferred to another school as a classroom instructor. Walts, a Caucasian, had exclusive authority to transfer Plaintiff, and he approved the transfer. Despite transferring Plaintiff from an administrative position to a classroom position, Defendant maintained Plaintiff's salary at the same rate for the 2013-2014 school year. The following year Plaintiff's salary was reduced to be commensurate with her position as a classroom teacher.

On January 28, 2016, Plaintiff filed this lawsuit in the Circuit Court for Prince William County, Virginia, alleging that Defendant violated Title VII by discriminating against her based on her race (Count I) and violated the Americans with Disabilities Act by demoting Plaintiff based on her disability

(Count II). On October 28, 2015, Plaintiff received a Right to Sue Letter from the EEOC.

Plaintiff relies on the following facts to support her argument that Defendant discriminated against her because of her race. First, Plaintiff alleges that Principal Coleman called the kids and parents at Mary Williams "ghetto." Second, Plaintiff took offense at Coleman's statement about finding uneducated people living in the woods frustrating because Plaintiff has a brother who did not attend college and lives in the woods. Coleman was unaware of this fact. Third, Plaintiff alleges that Coleman said that she would complain to the NAACP if Whites were promoted over Coleman.

Further, Plaintiff asserts that Coleman gave preferential treatment to African-Americans. Plaintiff noted an event where an African-American teacher was tardy yet was not reprimanded while Plaintiff, who was also tardy, was reprimanded. Plaintiff is unaware of whether the African-American teacher was ever late to work or other events. Plaintiff also relies on the fact that Coleman allowed an African-American teacher to sit in the place where Plaintiff should have sat for the faculty picture. Lastly, Plaintiff argues that it was racial discrimination for Coleman, a Black secretary, and a Black guidance counselor to receive walkie-talkies for fire drills while Plaintiff did not receive

6

one. Plaintiff viewed this treatment as racially discriminatory because Plaintiff is White and the others are Black.

On February 19, 2016, Defendant removed this case to the U.S. District Court for Eastern District of Virginia. This Court has jurisdiction under 28 U.S.C. §§ 1332, 1367, 1441, and 1446. On October 20, 2016, Defendant moved for summary judgment on all counts, which includes race discrimination in violation of Title VII and disability discrimination in violation of the ADA.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

While a plaintiff can prove discrimination through direct evidence, direct evidence is often unavailable. In the absence of direct evidence of discrimination, a plaintiff must rely on the *McDonnell Douglas* burden-shifting framework. Burns v. AAF-

McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). There are three phases in the *McDonnell Douglas* framework: (1) the plaintiff must establish a prima facie case; (2) if plaintiff presents a prima facie case, then the Defendant has the burden to show a legitimate, non-discriminatory reason for the adverse employment action; and (3) then the burden shifts to the plaintiff to prove that the reason given by the Defendant is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

The Court now turns to Plaintiff's race discrimination claim based on disparate treatment, hostile work environment, and discriminatory demotion. To establish a prima facie case of disparate treatment, a plaintiff must show that (1) she is a member of a protected class; (2) she performed her job duties satisfactorily; (3) she suffered adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably. See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

In a reverse discrimination case, this Court has imposed a higher standard of proof because it is "the unusual employer who discriminates against the majority." Adams v. High Purity Sys. Inc., No. 1:09CV354, 2009 WL 2391939, at *5 (E.D. Va. July 2, 2009), aff'd, 382 F. App'x 269 (4th Cir. 2010). The Fourth Circuit has not expressly adopted this higher burden although it has imposed a higher standard for reverse discrimination claims

8

on other grounds. See Lucas v. Dole, 835 F.2d 532, 533-34 (4th Cir. 1987); see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 851 (D.C. Cir. 2006) (noting that several circuit courts impose a higher burden of proof on plaintiffs arguing reverse discrimination). Plaintiff cannot prove the required elements for a prima facie case of racial discrimination.

First, Plaintiff cannot prove that she was performing her job satisfactorily. In evaluating a Title VII claim, the court must determine if the defendant had an unlawful discriminatory motive, not if the defendant made a sound business decision. See Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995). A defendant is entitled to make a non-discriminatory business decision without a court second-guessing that decision. Id. As the Fourth Circuit has held, an employer may establish its own performance standards, provided those standards are not a mask for discrimination. Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997).

Plaintiff failed to meet Defendant's performance standards. Defendant requires assistant principals to be at work by 8:00 a.m. every day, except for Wednesdays when they are required to be at work by 7:45 a.m. for a faculty meeting. Plaintiff does not allege that this performance standard is discriminatory, yet she has failed to meet it. Plaintiff was informed through PIPs,

letters of reprimand, and poor performance evaluations that she failed to meet Defendant's performance standard for punctuality.

Despite being on notice that her performance must improve, Plaintiff has been chronically late to work for years. As early as 2010, Plaintiff identified in her Growth Plan that her time management and punctuality needed to improve. Yet, Plaintiff was tardy on sixty-eight out of seventy-four days from August 2010 to January 2011. During the 2012-2013 school year, Plaintiff was late on fifty-eight out of eighty documented arrival times. Each of Plaintiff's supervisors disciplined her for tardiness. In her words, Plaintiff "owns" her tardiness. It is undisputed that Defendant required punctuality and Plaintiff failed to meet that standard. Thus, Plaintiff cannot prove that she was performing her duties satisfactorily.

Second, Plaintiff also cannot prove that Defendant treated similarly situated employees outside the protected class more favorably. A plaintiff must establish that similarly situated employees outside the protected class were treated more favorably after engaging in similar misconduct. Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008). To be meaningful, the comparison must clearly show the similarity in conduct but dissimilarity in consequences between plaintiff and the comparator-employee. See Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 134 (4th Cir. 2002) (holding that the plaintiff's

comparison failed because "none of the[] employees were engaged
in the same type of misconduct attributed to [plaintiff].").

Like the plaintiff in Bryant, Plaintiff has failed to make
a meaningful comparison between her conduct and consequences to
the conduct and consequences of other tardy administrators. In
fact, she has not identified any assistant principals that have
been habitually or even occasionally tardy. Plaintiff has only
noted an isolated incident where both Plaintiff and an African-
American teacher arrived late for an event but only Plaintiff
was disciplined. This comparison is not meaningful because the
comparator-employee is not an assistant principal and there is
no evidence that this teacher has a record of chronic tardiness.
Thus, Plaintiff cannot prove disparate treatment.

To present a prima facie case for hostile work environment,
a plaintiff must prove that: (1) she was subjected to unwelcome
conduct; (2) the conduct was based on race; (3) the conduct was
sufficiently pervasive or severe to alter the conditions of
employment and create a hostile workplace; and (4) there is some
basis for imputing liability to the employer. See Spriggs v.
Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001); Smith
v. First Union Nat'l Bank, 202 F.3d 234, 241 (4th Cir. 2000).
Again, Plaintiff cannot prove the required elements of a prima
facie case of race discrimination.

11

First, Plaintiff cannot prove that she was subject to unwelcome conduct because of her protected characteristic, being White. A plaintiff must establish that she would not have been harassed but-for her protected characteristic. Id. Title VII only prevents unwelcome conduct stemming from a protected characteristic; it is not a general civility code. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). As the Supreme Court stated, "Title VII does not prohibit all verbal or physical harassment in the workplace . . . ." Id.

Plaintiff cannot establish that she would not have been disciplined or transferred but-for her being White. The record is replete with evidence that Plaintiff was chronically late to work, and Plaintiff does not dispute this fact. Furthermore, the decision to transfer Plaintiff to a classroom teacher position was recommended by Goss, a White person, and approved by Walts, a White person. Coleman, the only African-American, recommended that Defendant renew Plaintiff's contract at Mary Williams as an Assistant Principal. These facts undermine Plaintiff's argument that racial animus motivated her transfer and salary reduction.

In response, Plaintiff offers conjecture and speculation as to why she was disciplined and transferred. She argues that Defendant showed racial animus through Coleman's statement about uneducated people living in the woods or Coleman's comment that Plaintiff did not speak "black." But Plaintiff's "own naked

12

opinion, without more, is not enough to establish a prima facie case of age discrimination." Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Generally, to find that adverse employment action was racially motivated, there must be evidence of racial epithets or overt racially insulting conduct. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 191 (4th Cir. 2004). Plaintiff has not asserted that Defendant referred to her using any racial epithets or derogatory terms. At most, Coleman was rude to Plaintiff, but Title VII does not provide a cause of action to prevent rudeness. See Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006). Simply put, Plaintiff has not presented the evidence necessary to show that she was subject to unwelcome conduct on account of her race.

Second, even if offensive, Defendant's conduct was neither severe nor pervasive. In determining if conduct is severe and pervasive, courts consider the totality of circumstances, such as whether the conduct is frequent, severe, merely an offensive utterance, physically threatening or humiliating, interferes with an employee's work performance, or damages an employee's psychological well-being. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The defendant's conduct must be both objectively and subjectively abusive. Id. at 22. Unless extremely serious, an isolated incident does not qualify as severe and pervasive because it does not change the "terms and

conditions of employment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998); <u>see also</u> <u>Harris v. Home Sales Co.</u>, 499 F. App'x 285, 291 (4th Cir. 2012) (holding that "stray or isolated" remarks are insufficient to prove discrimination).

Plaintiff cannot prove that a few rude remarks from Coleman qualify as severe and pervasive discriminatory conduct. Although not a reverse discrimination case, <u>Harris v. Home Sales Co.</u> is similar to the present case. In <u>Harris</u>, the plaintiff complained of racial discrimination after his employer promoted a Caucasian man to a supervisor position instead of plaintiff. 499 F. App'x at 288. The plaintiff asserted that his employer referred to him as a "nigger." The defendant fired plaintiff, who struggled with punctuality, when he failed to report for work after more than a week. <u>Id.</u> at 289. The district court granted summary judgment to the defendant, and the Fourth Circuit affirmed. <u>Id.</u> at 291.

Considering that the employer-defendant's actions in <u>Harris</u> did not evidence racial discrimination, then the more innocuous action of Defendant in this case is likewise inactionable. The primary facts that Plaintiff relies on to support her claim is that Coleman refused to allow Plaintiff to sit beside her for a faculty picture and that Coleman mentioned making a complaint to the NAACP. Those facts alone do not rise to the level of severe, frequent, and harmful conduct required to prove that Defendant's conduct was so severe and pervasive as to change the terms and

conditions of employment. Thus, Plaintiff has failed to present a prima facie case for hostile workplace discrimination.

To present a prima facie case for discriminatory demotion, Plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the job and her performance was satisfactory; (3) she suffered an adverse employment action; and (4) her original position remained open or was filled by a similarly qualified candidate outside the protected class. Id.

Here, Plaintiff has not presented a prima facie case for discriminatory demotion. For the reasons stated above, Plaintiff was not performing her job satisfactorily. She was chronically late, and she was not demonstrating initiative in leadership. Likewise, Plaintiff cannot prove that her position remained open or that it was filled by a similarly qualified person outside the protected class. Her position as an Assistant Principal at Mary Williams was filled by David Peck, a White person, which cuts against Plaintiff's argument that she was demoted because of her protected characteristic, being White. Thus, Plaintiff has not presented a prima facie case of discriminatory demotion.

Next, the Court turns to Plaintiff's claim of disability discrimination. To present a prima facie case of discrimination for a disability, a plaintiff must prove that: (1) she has a disability; (2) she is otherwise qualified for the job at issue; and (3) she suffered adverse employment action solely because of

15

her disability. Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d
1261, 1265 (4th Cir. 1995).

Here, even Plaintiff has acknowledged that her transfer was
not because of her disability. In her deposition, Plaintiff was
asked: "Do you believe you were transferred back to the
classroom based upon your disability?" Plaintiff answered: "No."
Furthermore, it is undisputed that Plaintiff's transfer occurred
at least in part because she requested the transfer. Considering
that the adverse employment action must be exclusively because
of the disability, Plaintiff cannot meet the threshold required
for proving disability discrimination.

In contrast, the record does demonstrate that Plaintiff was
transferred because her performance did not meet Defendant's
legitimate expectations and because Plaintiff did not work well
with Coleman. Those are both valid reasons for Defendant to make
a business decision to transfer Plaintiff. This is especially
true when Plaintiff requested the transfer while Coleman
recommended renewal of Plaintiff's contract as an Assistant
Principal at Mary Williams. For these reasons, Plaintiff cannot
prove that she was a victim of disability discrimination.

Finally, Plaintiff also cannot prove that Defendant denied
her a reasonable accommodation for her disability. To present a
prima facie case for failure to accommodate, a plaintiff must
prove that: (1) she had a disability within the meaning of the

16

ADA; (2) defendant had notice of the disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) defendant refused such an accommodation. Haneke v. Mid-Atl. Capital Mgmt., 131 F. App'x 399, 400 (4th Cir. 2005). The employer must know both of the disability and the desire for an accommodation to trigger the employer's duty to engage in an interactive process to identify a reasonable accommodation. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346 (4th Cir. 2013). There are circumstances where an employer will not be held liable for failing to engage in an interactive process. Id.

Here, Plaintiff failed to request an accommodation for her disability. She did not even mention her disability until 2013 as a reason for her chronic tardiness. Even after mentioning the disability, Plaintiff presented other reasons for her tardiness such as the location of her parking spot, teachers, parents, students, and injuries. When asked for medical documentation of her disability, Plaintiff failed to comply. She only provided two notes from her physician indicating that she suffered from postherapic neuralgia, but neither note identified a reasonable accommodation that would help Plaintiff arrive on time for work.

Plaintiff also cannot prove that Defendant refused to grant her an accommodation or to engage in an interactive process. Upon learning of Plaintiff's disability, Goss referred Plaintiff

17

to the HR department to assist her in identifying a reasonable accommodation. The record shows that Plaintiff failed to follow-up as necessary to find a reasonable accommodation. Accordingly, Defendant cannot be held liable for not providing a reasonable accommodation.

For the reasons stated above, Plaintiff has not presented a prima facie case on any of her claims. Plaintiff also has not rebutted Defendant's legitimate, non-discriminatory reason for Plaintiff's demotion and transfer: she has been chronically late for years as shown through the PIPs, letters of reprimand, poor performance evaluations, and her own Growth Plan. The fact that Plaintiff has been chronically tardy for work is well-documented and undisputed. It provides a legitimate reason for Defendant's decision to demote and transfer Plaintiff. Therefore, Plaintiff has failed to meet her burden under the *McDonnell Douglas* burden-shifting framework.

For the foregoing reasons, this Court finds that summary judgment should be GRANTED in favor of the Defendant on both counts. An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December 5, 2016

18